[926 NE2d 233, 899 NYS2d 726]

In the Matter of NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES et al., Respondents, v LAUREN LANTERMAN et al., Appellants.

In the Matter of NEW YORK STATE OFFICE OF ALCOHOLISM AND SUBSTANCE ABUSE SERVICES et al., Appellants, v VICTOR ORTIZ et al., Respondents.

Argued February 9, 2010; decided March 25, 2010

276

**POINTS OF COUNSEL**

*Edward J. Aluck,* Albany, and *William P. Seamon* for appellants in the first above-entitled proceeding. I. The Appellate Division erroneously stayed arbitration of this dispute because remedies available to the arbitrator would not violate public policy. (*Matter of City of Johnstown [Johnstown Police Benevolent Assn.],* 99 NY2d 273; *Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807,* 8 NY3d 513; *Matter of Committee of Interns & Residents [Dinkins],* 86 NY2d 478; *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.,* 45 NY2d 411; *Board of Educ., Lakeland Cent. School Dist. of Shrub Oak v Barni,* 51 NY2d 894; *Matter of State of N.Y., N.Y. State Dept. of*

*Agric. & Mkts. [Public Empls. Fedn.]*, 277 AD2d 564; *Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132.) II. The Appellate Division erroneously concluded that arbitration of this dispute would necessarily violate public policy and that it is not authorized by the parties' collective bargaining agreement. (*Matter of Wyandanch Union Free School Dist. v Wyandanch Teachers Assn.*, 48 NY2d 669; *Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513; *Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d 273; *Matter of Winter v Board of Educ. for Rhinebeck Cent. School Dist.*, 79 NY2d 1; *Matter of Smith v Board of Educ. of Wallkill Cent. School Dist.*, 65 NY2d 797; *Matter of Board of Educ. of Norwood-Norfolk Cent. School Dist. [Hess]*, 49 NY2d 145; *Matter of Lynch v Nyquist*, 41 AD2d 363, 34 NY2d 588; *Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington*, 30 NY2d 122; *Board of Educ., Bellmore-Merrick Cent. High School Dist., Nassau County v Bellmore-Merrick United Secondary Teachers*, 39 NY2d 167; *Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1.)

*Andrew M. Cuomo, Attorney General*, Albany (*Julie M. Sheridan, Barbara D. Underwood* and *Andrew D. Bing* of counsel), for respondents in the first above-entitled proceeding. This dispute involving the termination of an employee who did not maintain the teaching certification that is a statutory and regulatory qualification for employment as a teacher is not arbitrable as a contract grievance under article 34 of the parties' collective bargaining agreement. (*Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132; *Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513; *Matter of Blackburne [Governor's Off. of Empl. Relations]*, 87 NY2d 660; *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, 42 NY2d 509; *Matter of Felix v New York City Dept. of Citywide Admin. Servs.*, 3 NY3d 498; *Mandelkern v City of Buffalo*, 64 AD2d 279; *Matter of Sorano v City of Yonkers*, 37 AD3d 839; *Matter of O'Connor v Board of Educ. of City School Dist. of City of Niagara Falls*, 48 AD3d 1254, 10 NY3d 928; *Matter of Moogan v New York State Dept. of Health*, 8 AD3d 68; *Matter of Naliboff v Davis*, 133 AD2d 632, 71 NY2d 805.)

*James R. Sandner*, Latham, and *James D. Bilik* for New York State United Teachers, amicus curiae in the first above-entitled proceeding. I. The Appellate Division erred by staying arbitration on public policy grounds. (*Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132; *Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d 273; *Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513; *Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d 72; *Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1; *Matter of Lynch v Nyquist*, 41 AD2d 363, 34 NY2d 588; *Matter of Meliti v Nyquist*, 41 NY2d 183; *Matter of Chambers v Board of Educ., Lisbon Cent. School Dist.*, 58 AD2d 961; *Matter of Rappold v Board of Educ., Cleveland Hills Union Free School Dist.*, 95 AD2d 890.) II. The parties' agreement to arbitrate encompassed the dispute at issue. (*Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132; *Matter of Board of Educ. of Watertown City School Dist. v Watertown Educ. Assn.*, 74 NY2d 912; *Board of Educ. of Lakeland Cent. School Dist. of Shrub Oak v Barni*, 49 NY2d 311; *Matter of Franklin Cent. School [Franklin Teachers Assn.]*, 51 NY2d 348; *Board of Educ. of Cattaragus Cent. School v Cattaraugus Teacher's Assn.*, 55 NY2d 951; *Matter of Lynch v Nyquist*, 41 AD2d 363; *Matter of Chambers v Board of Educ., Lisbon Cent. School Dist.*, 58 AD2d 961; *Matter of Rappold v Board of Educ., Cleveland Hills Union Free School Dist.*, 95 AD2d 890.)

*Andrew M. Cuomo, Attorney General*, Albany (*Julie M. Sheridan, Barbara D. Underwood* and *Andrew D. Bing* of counsel), for appellants in the second above-entitled proceeding. This dispute involving the termination of an employee who did not maintain a professional credential that is a qualification for employment is not arbitrable as a contract grievance under article 34 of the parties' collective bargaining agreement. (*Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132; *Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513; *Matter of Blackburne [Governor's Off. of Empl. Relations]*, 87 NY2d 660; *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, 42 NY2d 509; *Matter of Felix v New York City Dept. of Citywide*

*Admin. Servs.,* 3 NY3d 498; *Mandelkern v City of Buffalo,* 64 AD2d 279; *Matter of Sorano v City of Yonkers,* 37 AD3d 839; *Matter of O'Connor v Board of Educ. of City School Dist. of City of Niagara Falls,* 48 AD3d 1254, 10 NY3d 928; *Matter of Moogan v New York State Dept. of Health,* 8 AD3d 68; *Matter of Naliboff v Davis,* 133 AD2d 632, 71 NY2d 805.)

*Edward J. Aluck,* Albany, and *William P. Seamon* for respondents in the second above-entitled proceeding. I. The Appellate Division properly denied the application to stay arbitration on the ground that the grievance concerns the interpretation, application or a claimed violation of article 33 of the collective bargaining agreement and, therefore, that it falls within the broad contract arbitration clause of article 34 of the parties' collective bargaining agreement. (*Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807,* 8 NY3d 513; *Matter of City of Johnstown [Johnstown Police Benevolent Assn.],* 99 NY2d 273; *Matter of Committee of Interns & Residents [Dinkins],* 86 NY2d 478; *Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington,* 30 NY2d 122; *Board of Educ., Bellmore-Merrick Cent. High School Dist., Nassau County v Bellmore-Merrick United Secondary Teachers,* 39 NY2d 167; *Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO,* 99 NY2d 1; *Steelworkers v Warrior & Gulf Nav. Co.,* 363 US 574; *Matter of Sprinzen [Nomberg],* 46 NY2d 623; *Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO,* 95 NY2d 273; *Matter of Vestal Cent. School Dist. [Vestal Teachers Assn.],* 2 AD3d 1190, 2 NY3d 708.) II. Respondents' argument concerning past practice and bargaining history is for an arbitrator, not this Court, to review. In any event, such review establishes this grievance is arbitrable. (*Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva,* 92 NY2d 326; *Matter of State of N.Y., N.Y. State Dept. of Agric. & Mkts. [Public Empls. Fedn.],* 277 AD2d 564; *Matter of Felix v New York City Dept. of Citywide Admin. Servs.,* 3 NY3d 498; *Matter of Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v City of Cohoes,* 94 NY2d 686; *Matter of Chalachan v City of Binghamton,* 55 NY2d 989; *Matter of Union-Endicott Cent. School Dist. [Endicott Teachers' Assn.],* 59 AD3d 799; *Matter of Police Benevolent Assn. of N.Y. State Troopers, Inc. [Governor's Off. of Empl. Relations],* 17 AD3d 972.)

*Nancy E. Hoffman,* Albany, and *Leslie C. Perrin* for Civil

Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, amicus curiae in the first and second above-entitled proceedings. Summary termination of an employee who is covered by a contractual disciplinary arbitration provision simply because the employee no longer possesses a job-related certification is contrary to law. (*Matter of Felix v New York City Dept. of Citywide Admin. Servs.,* 3 NY3d 498; *Matter of City of Long Beach v Civil Serv. Empls. Assn., Inc.—Long Beach Unit,* 8 NY3d 465; *Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO,* 99 NY2d 1.)

**OPINION OF THE COURT**

SMITH, J.

In these two cases, state employees who were dismissed because they lacked the credentials required for their jobs seek to arbitrate the question of whether their dismissals were disciplinary actions. Under our decision in *Matter of Felix v New York City Dept. of Citywide Admin. Servs.* (3 NY3d 498 [2004]), the dismissals clearly were not disciplinary, and the employees' assertion that they were does not have a relationship with their collective bargaining agreement sufficient to justify arbitration of the issue.

I

Lauren Lanterman was a teacher employed by the Office of Children and Family Services (OCFS); Victor Ortiz was a counselor employed by the Office of Alcoholism and Substance Abuse Services (OASAS). Though they worked for different agencies, Lanterman and Ortiz belonged to the same union, the New York State Public Employees Federation (PEF), and their rights were governed by the same collective bargaining agreement (CBA).

Both Lanterman and Ortiz needed credentials for the jobs they held. A civil service classification standard, promulgated pursuant to Education Law § 112 (1) and 8 NYCRR 116.3 (b), required Lanterman to have a teaching certificate appropriate to her specialty. OASAS regulations, promulgated pursuant to Mental Hygiene Law § 19.07 (d), required Ortiz to have a credential as a credentialed alcoholism and substance abuse counselor (CASAC). Before the events leading to this litigation, Lanterman had a provisional teaching certificate, and Ortiz had a CASAC credential good for three years. Both of these credentials expired, and both Lanterman and Ortiz failed to obtain new ones. As a result, both were dismissed.

PEF filed grievances for Lanterman and Ortiz, claiming that their dismissals violated their rights under article 33 of the CBA. That article is entitled "DISCIPLINE" and begins with the following words:

"33.1 Applicability

"The disciplinary procedure set forth in this Article shall be in lieu of the procedure specified in Sections 75 and 76 of the Civil Service Law and shall apply to all persons currently subject to Sections 75 and 76 of the Civil Service Law."

The stated purpose of article 33 is "to provide a prompt, equitable and efficient procedure for the imposition of discipline for just cause" (§ 33.2). It prescribes a detailed "disciplinary procedure," beginning with a "notice of discipline," which may be followed by a "disciplinary grievance," which, if not otherwise resolved, may in turn become the subject of a "disciplinary arbitration" (§ 33.5).

OCFS and OASAS rejected the grievances and the Governor's Office of Employee Relations upheld the rejections. The position of these agencies is that the grievances are not subject to arbitration because Lanterman's and Ortiz's dismissals were not for disciplinary reasons, but for the employees' failure to have the qualifications necessary for their jobs. PEF, Lanterman and Ortiz respond, in substance, that this itself is an arbitrable question. Under article 34 of the CBA, a "contract grievance," defined as "a dispute concerning the interpretation, application or claimed violation of a specific term or provision of this Agreement" (§ 34.1 [a]), is an arbitrable dispute. PEF, Lanterman and Ortiz argue that, since they say that article 33's disciplinary procedures are available in their case, and the employers say they are not, a "dispute concerning the interpretation, application or claimed violation" of a provision of the CBA exists. They thus seek an arbitration about what the contract means, to be followed, if they prevail, by a disciplinary procedure and perhaps a second, disciplinary, arbitration.

PEF filed notices of intention to arbitrate on Lanterman's and Ortiz's behalf, and the state agencies brought these proceedings under CPLR article 75 to stay the arbitrations. Both employees prevailed in Supreme Court. In the Appellate Division, the cases were decided by the same panel on the same day (*Matter of New York State Off. of Children & Family Servs. [Lanterman]*, 62 AD3d 1109 [3d Dept 2009]; *Matter of New York State*

*Off. of Alcoholism & Substance Abuse Servs. [Ortiz]*, 62 AD3d 1118 [3d Dept 2009]). The judgment in Lanterman's favor was reversed, but that in Ortiz's favor was affirmed, with two Justices dissenting in each case. The reason for the contrasting results is that one Justice was persuaded by the state agencies' argument, made as to Lanterman but not as to Ortiz, that the proposed arbitration would violate public policy.

In each case, the unsuccessful parties appeal to us as of right, pursuant to CPLR 5601 (a). We affirm in *Lanterman* and reverse in *Ortiz*. Because we conclude that neither grievance is arbitrable under the CBA, it is unnecessary for us to decide the public policy issue raised in *Lanterman*.

## II

The question Lanterman and Ortiz seek to arbitrate is essentially the same question we decided in *Felix*. There, a New York City employee was dismissed for failing to establish city residence, which was a prerequisite to his employment under a local law. The employee sought a hearing under Civil Service Law § 75 ("Removal and other disciplinary action"), but we rejected his claim, holding that the disciplinary provisions of the Civil Service Law did not apply to him. We explained that "while an act of misconduct invokes Civil Service Law § 75 disciplinary procedures," an employee's failure to meet a residence requirement "is separate and distinct from an act of misconduct" (3 NY3d at 505). We approved the distinction made in *Mandelkern v City of Buffalo* (64 AD2d 279, 281 [4th Dept 1978, Simons, J.]) between issues of "job performance, misconduct or competency," which are subject to Civil Service Law disciplinary procedures, and "a qualification of employment," which is not.

In *Felix*'s terms, the dismissals of Lanterman and Ortiz were plainly not disciplinary, but were for failure to meet qualifications of employment—a teaching certificate in Lanterman's case, a CASAC credential in Ortiz's. The State does not claim that the employees have forfeited their jobs by misconduct. It claims that they do not have the qualifications that they must have to hold those jobs.

PEF, Lanterman and Ortiz try to distinguish *Felix* by arguing that these cases involve contractual, not statutory, disciplinary procedures. The argument is without merit, because the relevant contract clause, on its face, is made applicable to exactly those cases to which the statute would otherwise apply: the contractual disciplinary procedure is "in lieu of the procedure

specified in Sections 75 and 76 of the Civil Service Law" and is applicable "to all persons currently subject to Sections 75 and 76 of the Civil Service Law." *Felix* squarely holds that sections 75 and 76 are inapplicable to the grievances of Lanterman and Ortiz.

PEF, Lanterman and Ortiz argue, in substance, that however weak their claim to be accorded disciplinary hearings may be, the claim is for an arbitrator, not a court, to decide. It is generally true that we distinguish "between the merits of grievances and the threshold question of whether courts or arbitrators have the authority to decide the merits" (*Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d 273, 279 [2002]) and that "[e]ven an apparent weakness of the claimed grievance is not a factor in the court's threshold determination" (*Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132, 142 [1999]). These rules are applicable as long as a contractual interpretation is at least colorable, but it is not true that any claim, no matter how insubstantial, may be arbitrated. Under *Watertown*, the test is "whether there is a reasonable relationship between the subject matter of the dispute and the general subject matter of the CBA" (93 NY2d at 143). We hold here, as we did in *Matter of Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v City of Cohoes* (94 NY2d 686, 694-695 [2000]), that the "reasonable relationship" test is not met: "despite the breadth of the arbitration clause in the CBA, it cannot be construed to extend to arbitration of grievances which, as a matter of law, do not effectively allege any breach of the collective bargaining agreement."

Accordingly, in *Lanterman*, the order of the Appellate Division should be affirmed with costs. In *Ortiz*, the order of the Appellate Division should be reversed with costs and the petition to stay arbitration granted.

CIPARICK, J. (dissenting). Because the parties' collective bargaining agreement (CBA) may be interpreted to manifest a clear intent to arbitrate the question of whether an employee who lacks the requisite credentials for employment can be terminated under the CBA's contract grievance and discipline procedures, I respectfully dissent and would compel arbitration.

In both of these cases the majority permanently stays arbitration, holding that the parties to the CBA did not agree to arbitrate their disputes involving termination of employees who

did not maintain professional credentials. The effect of this ruling is to deny the employees disciplinary due process, as established in the CBA, and permit their summary termination. It has long been settled that a dispute is arbitrable if the arbitration is not barred by "any statutory, constitutional or public policy" and the parties "in fact agreed to arbitrate the particular dispute" (*Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513, 519 [2007] [internal quotation marks omitted]). We have read the second of these requirements broadly; if there is a "reasonable relationship between the subject matter of the dispute and the general subject matter of the CBA," the dispute is arbitrable (*Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132, 143 [1999]). The arbitrator can then "make a more exacting interpretation of the precise scope of the substantive provisions of the CBA, and whether the subject matter of the dispute fits within them" (*id.*).

Under the CBA at issue here between New York State and the New York State Public Employees Federation (PEF), it would not be unreasonable for an arbitrator to conclude that the parties agreed to arbitrate this dispute. As the majority notes, article 34 of the CBA defines a "contract grievance" as "a dispute concerning the interpretation, application, or claimed violation of a specific term or provision of this Agreement" (§ 34.1 [a]). Because PEF, Lanterman, and Ortiz claim that the employers violated the procedural mandates of article 33 of the CBA, their claims fall under this definition. Notably, prior to these two matters, the State and PEF had a long-standing practice of following the disciplinary process set forth in article 33 whenever state agencies sought to terminate employees for lack of credentials. Whether article 33's disciplinary procedure applies here is undoubtedly a dispute over the application of a term of the CBA and, therefore, it should be resolved by the arbitrator, not a court.

This result is buttressed by our traditionally expansive reading of CBA arbitration clauses as a means of resolving public sector labor disputes. Generally, if a court "determine[s] that the arbitration clause is broad enough to encompass the subject matter of the dispute, '[t]he question of the scope of the substantive provisions of the contract is itself a matter of contract interpretation and application, and hence it must be deemed a matter for resolution by the arbitrator' " (*Matter of Board of*

*Educ. of Watertown City School Dist. v Watertown Educ. Assn.*, 74 NY2d 912, 913 [1989], quoting *Board of Educ. of Lakeland Cent. School Dist. of Shrub Oak v Barni*, 49 NY2d 311, 314 [1980]). This is true even where the substantive merits of a claim are weak (*Matter of Franklin Cent. School [Franklin Teachers Assn.]*, 51 NY2d 348, 357 [1980]).

The Office of Alcoholism and Substance Abuse Services (OASAS), the Office of Children and Family Services (OCFS), and the Governor's Office of Employee Relations (GOER) argue that Ortiz and Lanterman's terminations were not based on "misconduct or incompetence" and, thus, were not disciplinary actions. However, this "incompetency or misconduct" language comes from Civil Service Law § 75, which article 33 of the CBA supplants. Instead, the CBA provides that discipline may be imposed for "just cause." It would certainly be reasonable for an arbitrator to determine that, as Lanterman and Ortiz argue, failure to maintain a license constitutes "just cause" for discipline under the CBA. Because addressing this claim requires an interpretation of the CBA and the arbitrator alone has the power to determine the scope of the contract provisions, the dispute should be arbitrable.

In holding otherwise, the majority's reliance on *Matter of Felix v New York City Dept. of Citywide Admin. Servs.* (3 NY3d 498 [2004]) is misplaced, since that case did not involve a CBA or any language of comparable breadth to that used in article 34. In *Felix*, we interpreted a provision of the Administrative Code of the City of New York requiring a municipal employee to maintain a residence within the city and the statutory language of Civil Service Law § 75. The majority asserts that because article 33 replaces the procedure of Civil Service Law § 75, the contract language should be interpreted as we interpreted section 75 in *Felix*, where we distinguished between failure to comply with requirements that define eligibility and acts of misconduct or incompetence. In these cases, however, we are interpreting contractual language, including a provision specifying that any disputes regarding the interpretation of that language are themselves arbitrable. Moreover, section 12-120 of the New York City Administrative Code—the employment requirement at issue in *Felix*—expressly provides that failure to maintain residency constitutes a forfeiture of employment (*id.* at 502, citing Administrative Code of City of NY § 12-120). Here, because no specific statutory provision calls for automatic forfeiture of employment upon the loss of certification, the

arbitrator would have discretion to fashion a remedy. Furthermore, the notice and opportunity to contest procedures contained in the Administrative Code satisfied due process concerns in *Felix*, but are not available here.

Since I believe that the parties agreed to arbitrate these disputes, it is necessary to consider whether any public policy precludes the arbitration. I know of no such policy and, contrary to the Appellate Division's dispositive finding in *Lanterman*, do not think that the public policy of having well-qualified, certified teachers precludes arbitration here. A dispute is nonarbitrable if a court can "conclude, without engaging in any extended factfinding or legal analysis that a law [or policy] prohibits, in an absolute sense, the particular matters to be decided" by arbitration (*County of Chautauqua*, 8 NY3d at 519, quoting *Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1, 8-9 [2002] [internal quotation marks and brackets omitted]). "Put differently, a court must stay arbitration where it can conclude, upon examining the parties' contract and the implicated statute on their face, 'that the granting of *any* relief would violate public policy' " (*id.*, quoting *Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO*, 95 NY2d 273, 284 [2000]). Here, although the law clearly prohibits the parties' continued employment in their current positions without the requisite licensing, it does not require their termination; other remedies may be available.

In Lanterman's case, OCFS and GOER argue that arbitration of Lanterman's termination was barred by public policy,[1] but they fail to demonstrate that any relief granted by the arbitrator would violate public policy (*see Matter of Committee of Interns & Residents [Dinkins]*, 86 NY2d 478, 484 [1995]; *County of Chautauqua*, 8 NY3d at 519). For example, in keeping with the expansive powers of an arbitrator, Lanterman could have been suspended without pay[2] until she received her certification

---

1. OASAS and GOER do not press a public policy argument in the Ortiz case, but merely contend that the dispute is not arbitrable as a contract grievance under article 34 of the CBA.

2. OCFS maintains that article 33 of the CBA prohibits the suspension of Lanterman without pay pending the resolution of a disciplinary proceeding. Article 33 provides that OCFS may suspend an employee pending a full hearing before an arbitrator where OCFS determines that probable cause exists that the employee's "continued presence on the job . . . would severely interfere with operations" (§ 33.4 [a] [1]). Of course, an arbitrator can address

or she could have been reassigned to a non-teaching position.[3] Although the regulations of the Education Department provide that "[a]ll professional instructional personnel shall have the required certificates as set forth in Part 80 of this Title" (8 NYCRR 116.3 [b]), the law nowhere expresses that a lapsed certificate will result in immediate termination.[4]

Indeed, in previous cases where we have found that public policy favors termination of a tenured civil servant without a hearing, the applicable statute or regulation has made that policy clear. For example, the federal Hatch Act expressly provides that an employee employed in connection with a program financed by federal funds is subject to discharge if he or she becomes a candidate for partisan elected office (5 USC §§ 1502-1506). Similarly, Public Officers Law § 30 provides for the forfeiture by law of employment for conviction of a felony, and section 12-120 of the New York City Administrative Code expressly provides that failure to maintain residency constitutes a forfeiture of employment (see Felix, 3 NY3d at 502). Here, in stark contrast, no specific statutory provision calls for the automatic forfeiture of employment upon a loss of certification. Thus, the public policy exception to arbitrability of a dispute should not apply here and we should maintain our clear policy of discouraging judicial interference with public sector arbitration, as contemplated by the Taylor Law (Civil Service Law art 14).

Therefore, in *Lanterman*, I would reverse the order of the Appellate Division, dismiss the petition to stay arbitration, and grant the cross motion to compel arbitration. In *Ortiz*, I would affirm the Appellate Division order that dismissed the petition to stay arbitration and granted the cross motion to compel arbitration.

Judges GRAFFEO, READ, PIGOTT and JONES concur with Judge SMITH; Judge CIPARICK dissents and votes to reverse in a separate opinion in which Chief Judge LIPPMAN concurs.

---

whether the lack of professional certification constitutes "severe interference" with operations and what, if any, remedy is appropriate.

3. Article 33 of the CBA contemplates this remedy and provides that "[w]here the appointing authority has determined that an employee is to be temporarily reassigned pursuant to this Article, the employee shall be notified in writing of the location of such temporary reassignments and . . . such reassignment may involve the performance of out-of-title work" (§ 33.4 [b] [1]).

4. Similarly, OASAS' automatic dismissal of Ortiz from service for failure to maintain a required credential may not be appropriate under the circumstances and there may be other available remedies for an arbitrator to fashion.

In *Matter of New York State Off. of Children & Family Servs. v Lanterman*: Order affirmed, with costs.

Judges GRAFFEO, READ, PIGOTT and JONES concur with Judge SMITH; Judge CIPARICK dissents and votes to affirm in a separate opinion in which Chief Judge LIPPMAN concurs.

In *Matter of New York State Off. of Alcoholism & Substance Abuse Servs. v Ortiz*: Order reversed, etc.