Matter of Crittenden v New York State Off. for People With Dev. Disabilities (2018 NY Slip Op 08993)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Matter of Crittenden v New York State Off. for People With Dev. Disabilities

2018 NY Slip Op 08993

Decided on December 27, 2018

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 27, 2018

526700

[*1]In the Matter of SOLANA CRITTENDEN, Appellant,
vNEW YORK STATE OFFICE FOR PEOPLE WITH DEVELOPMENTAL DISABILITIES et al., Respondents.

Calendar Date: November 16, 2018
Before: Garry, P.J., McCarthy, Egan Jr., Devine and Clark, JJ.


Daren J. Rylewicz, Civil Service Employees Association, Inc., Albany (Jeremy Ginsburg of counsel), for appellant.
Barbara D. Underwood, Attorney General, Albany (Joseph M. Spadola of counsel), for respondents.

MEMORANDUM AND ORDER
Egan Jr., J.
Appeal from an order and judgment of the Supreme Court (McDonough, J.), entered September 18, 2017 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to, among other things, review a determination of respondents denying her reinstatement to her former position.
Petitioner was employed by respondent Office for Persons with Developmental Disabilities (hereinafter OPWDD) as a Direct Support Assistant for the Finger Lakes Developmental Disabilities Service Office (hereinafter FLDDSO). In January 2016, petitioner was charged with various crimes relating to an incident with a patient under her care and, as a result, she was suspended from her employment without pay. OPWDD thereafter charged petitioner with six specifications of misconduct/incompetence related to her alleged criminal conduct. Petitioner was subsequently indicted on charges of attempted strangulation in the second degree, endangering the welfare of an incompetent or physically disabled person in the first and second degrees and criminal obstruction of breathing or blood circulation; she pleaded not guilty to the charges. Thereafter, the Office of the Medicaid Inspector General (hereinafter Inspector General) notified petitioner that, based on the pendency of felony charges against her, she was thereby excluded from participation in the state Medicaid program. Based on said exclusion, OPWDD informed petitioner that her employment was subject to termination and afforded her with two separate opportunities to meet with FLDDSO representatives for the purpose of providing documentary evidence demonstrating that she was not an excluded provider. Petitioner did not attend either meeting and, on October 25, 2016, OPWDD advised petitioner that her employment was terminated as of close of business on November 1, 2016. One day later, on October 26, 2016, following a jury trial, petitioner was acquitted of all criminal charges for which she was indicted. Notwithstanding, petitioner was terminated from [*2]employment on November 1, 2016 [FN1]. In February 2017, petitioner commenced this CPLR article 78 proceeding against OPWDD and its Commissioner seeking, among other things, reinstatement to her previous position, arguing that her termination was effectuated without due process and was otherwise arbitrary and capricious. Supreme Court dismissed the petition, and petitioner now appeals.
We affirm. We reject petitioner's contention that she was denied due process because OPWDD did not follow the disciplinary procedures mandated by the Civil Service Law and set forth in her collective bargaining agreement. Significantly, petitioner was not terminated from employment based upon any allegation of incompetence or misconduct; instead, she was terminated for failing to maintain a minimum qualification of her employment (i.e., continued eligibility for the Medicaid program) and, therefore, the disciplinary procedures mandated by the Civil Service Law and the collective bargaining agreement were not applicable (see Civil Service Law § 75 [1]; Matter of New York State Off. of Children & Family Servs. v Lanterman, 14 NY3d 275, 282 [2010]; Matter of Felix v New York City Dept. of Citywide Admin. Servs., 3 NY3d 498, 505-506 [2004]; Matter of King v New York State Off. of Alcoholism & Substance Abuse Servs., 149 AD3d 1385, 1387 [2017]; Matter of Lutz v Krokoff, 102 AD3d 146, 147 [2012], lv denied 20 NY3d 860 [2013]). Similarly, we find no violation of Executive Law § 296 inasmuch as petitioner's termination from employment was based upon her exclusion from the Medicaid program and not the disposition of her criminal action, which was still pending at the time that petitioner received notification of her termination.
Additionally, as an employee that was terminated for failing to possess a minimum qualification of employment, petitioner received all the due process to which she was entitled. Contrary to petitioner's assertion, the requirement for a Direct Support Assistant to maintain eligibility to participate in the Medicaid program as a minimum qualification for the position was expressly set forth in OPWDD's employee handbook, which indicates that an offer of employment may not be made until a potential candidate has been screened against both the state and federal databases of Medicaid excluded individuals. Said requirement was also set forth in a state regulation, a special advisory bulletin and a mandatory annual Medicaid compliance job training for employees, and was the subject of quarterly screenings to ensure that such employees maintained their eligibility in the Medicaid program (see 18 NYCRR 515.5 [c]). Moreover, OPWDD's Acting Director of Personnel provided an affidavit wherein he indicated that "OPWDD is expressly prohibited under [s]tate law from employing an individual in a role that would involve the furnishing of medical care or services to recipients of medical assistance if he or she is on [the Inspector General's] Excluded Provider Lists," and that all Direct Support Assistants furnish such medical care and services. Additionally, prior to petitioner's termination, OPWDD sent her a letter informing her that her exclusion from the Medicaid program subjected her to potential termination and, thereafter, provided her two separate opportunities to meet with FLDSSO representatives to provide documentary evidence establishing either that she was not the person identified in the Inspector General's database as being an excluded provider or to otherwise prove her continued eligibility for the Medicaid program. For reasons that are unclear from the record, she elected not to attend either meeting; however, it is not disputed that she received notice of the charge that led to her termination and was provided an adequate opportunity to contest same (see Matter of Felix v New York City Dept. of Citywide Admin. Servs., 3 NY3d at 505-506; Matter of King v New York State Off. of Alcoholism & Substance Abuse Servs., 149 AD3d at 1387; Matter of Lutz v Krokoff, 102 AD3d at 147; Matter of Carr v New York State Dept. of Transp., 70 AD3d 1110, 1111 [2010], lv denied 14 NY3d 709 [2010]).
Finally, Supreme Court appropriately determined that respondents' termination of petitioner's employment was not arbitrary and capricious or an abuse of discretion. As we previously indicated, the record reflects that petitioner was notified by OPWDD of her [*3]termination from employment in October 2016 as a result of her exclusion from participation in the state Medicaid program, which was a minimum job requirement for continued employment as a Direct Support Assistant (see 18 NYCRR 515 [c]; Matter of Beck-Nichols v Bianco, 20 NY3d 540, 559 [2013]). The fact that petitioner allegedly regained her eligibility to participate in the Medicaid program following her termination based upon her subsequent acquittal of the criminal charges against her does not render irrational OPWDD's determination to terminate her employment in the first instance. Accordingly, we find that Supreme Court appropriately dismissed the petition.
Garry, P.J., McCarthy, Devine and Clark, JJ., concur.
ORDERED that the order and judgment is affirmed, without costs.
Footnotes

Footnote 1: Petitioner alleges that she thereafter filed a grievance with OPWDD demanding, among other things, reinstatement of her employment. The record, however, is unclear whether said grievance was ever actually filed.